**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

PAPAA SPIO-GARBRAH, individually and on behalf of all others similarly situated,

Plaintiff,

- v -

HILTON RESORTS CORPORATION,

Defendant.

Civil Action No.: 7:25-cv-7701

**COMPLAINT**

*Jury Trial Demanded*

Plaintiff Papaa Spio-Garbrah ("Spio-Garbrah"), on behalf of himself and all others similarly situated, by and through his undersigned attorneys, brings this Complaint against Defendant Hilton Resorts Corporation ("Hilton"), and alleges as follows:

## PRELIMINARY STATEMENT

1. This class action arises from Defendant Hilton Resorts Corporation's systematic and unlawful practice of failing to pay its Lead Generation Agents for all commissions they earned, and its illegal retaliation against those who complained.

2. Plaintiff Spio-Garbrah, a high-performing agent who had earned numerous accolades, was subjected to a recurring pattern of underpayment. When he escalated his complaints about unpaid commissions to Human Resources, Hilton responded not by correcting its errors, but by terminating his employment less than two months later.

3. Spio-Garbrah brings claims for unpaid wages in violation of New York Labor Law ("NYLL") § 198, retaliation for a wage complaint in violation of NYLL § 215, and breach of contract arising from Defendant's failure to pay Spio-Garbrah and other similarly situated employees the commissions they earned pursuant to their Compensation Plan.

## PARTIES, JURISDICTION, AND VENUE

4. Plaintiff Spio-Garbrah is a citizen of the State of New York and former Lead

Generation Agent of Hilton.

5. At all relevant times, Spio-Garbrah was an "employee" of Defendant under all relevant statutes.

6. Upon information and belief, Hilton is a corporation registered in Delaware and permitted to do business in New York.

7. Upon information and belief, Hilton's principal place of business is in Orlando, Florida.

8. Hilton is therefore a citizen of Delaware and Florida for purposes of diversity jurisdiction.

9. Hilton conducted business at 5323 Millenia Lakes Blvd. Suite 400, Orlando, FL 32839, which was Spio-Garbrah's assigned work location.

10. At all relevant times, Defendant was Spio-Garbrah's "employer" under all relevant statutes.

11. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 as there is a diversity of citizenship among the parties and this action involves an amount in controversy in excess of $75,000, excluding interest and costs.

12. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district, including Plaintiff's work from his home in Mount Vernon, New York, his performance of core job duties for Hilton's benefit from this district, his communications with Defendant's management and Human Resources from this district regarding his employment and unpaid wages, and the financial and emotional harm he suffered in this district as a result of Defendant's unlawful conduct.

## FACTUAL BACKGROUND

13. Spio-Garbrah had 8 years of experience in the sales industry prior to joining Hilton.

14. In or about May 2017, Hilton hired Spio-Garbrah for the role of In House Marketing Executive.

15. In or around January 2024, Spio-Garbrah transitioned to the role of Lead Generation Agent at Hilton, with a portion of his compensation to be paid in the form of commissions pursuant to the Lead Generation Agent Compensation Plan.

16. A true and correct copy of the Lead Generation Agent Compensation Plan, signed by Spio-Garbrah on January 17, 2024, is attached hereto as Exhibit A.

17. Spio-Garbrah worked remotely from his home in Mount Vernon, New York, though he was assigned to Hilton's office at 5323 Millenia Lakes Blvd. Suite 400, Orlando, FL 32839.

18. Spio-Garbrah's role at Hilton involved conducting virtual presentations, referred to as "tours," to prospective customers.

19. The tours involved educating participants about Hilton's vacation ownership opportunities, during which customers could earn promotional points or other incentives for their participation.

20. Pursuant to the Lead Generation Agent Compensation Plan, agents earned commissions based on the number of "Qualified Tours" completed, with payout rates set by Hilton for specific performance tiers.

21. For example, during Spio-Garbrah's employment, agents were paid $20 per tour at Level 1 (for completing 1 to 29 tours), $40 per tour at Level 2 (for 30 to 39 tours), and $60 per

tour at Level 3 (for 40 to 44 tours).

22. Spio-Garbrah succeeded in his role and received positive feedback based on his performance. He earned several awards, including Rookie of the Year in 2017, Grand Achievement Senior Marketer in 2019, Champions Club Award for the top performers in the entire company in 2023, and the President's Club Award in 2024. He also earned performance incentives due to his positive performance.

23. While Spio-Garbrah was employed by Hilton, he never received any formal criticism or negative feedback regarding his work performance.

24. Beginning shortly after transitioning to the Lead Generation Agent role, Spio-Garbrah repeatedly complained to his manager that he was not being paid for all the commissions he earned. These discrepancies occurred frequently, on an almost monthly basis.

25. Upon information and belief, managers consistently reviewed employee tours and related data as part of their roles to determine employee commissions and customer promotional points or other incentives.

26. Hilton therefore had actual, contemporaneous knowledge of the number of Qualified Tours completed by its agents.

27. Upon information and belief, Hilton regularly failed to pay its employees the commissions they earned pursuant to the Lead Generation Agent Compensation Plan.

28. On or around April 2, 2025, Spio-Garbrah again told his managers, including Laura Crigler and Lois Shamada ("Shamada"), that he was only paid for 84 tours in March 2025 although he had completed 85 tours.

29. On or around April 3, 2025, Spio-Garbrah escalated his complaint to Hilton's Human Resources department via an email titled "credit issues."

30. Around the same time, Spio-Garbrah earned a performance incentive for completing the greatest number of tours out of any Lead Generation Agent in his department for the month of March. He was told he would be paid the incentive in April.

31. The following month, Spio-Garbrah still had not been paid the performance incentive he earned.

32. On or around May 14, 2025, Spio-Garbrah complained to his senior director, Shamada that he had not been paid the performance incentive he earned in March. Shamada assured him that he would be paid as promised.

33. That next day, Spio-Garbrah received a positive performance review from Shamada. He was informed that he had completed the second highest number of tours in his department.

34. Spio-Garbrah also earned a performance incentive in May.

35. On or around May 16, 2025, Hilton terminated Spio-Garbrah's employment, only two days after he received a positive performance review and less than two months after he first complained to Human Resources of pay related issues.

36. Hilton did not compensate Spio-Garbrah for the 38 tours he completed in May or the performance incentives he earned in March and May.

## RULE 23 CLASS ALLEGATIONS – NEW YORK LABOR LAW

37. Plaintiff brings the First Cause of Action below pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all employees who were employed by Hilton and compensated pursuant to the Lead Generation Agent Compensation Plan on or after the date that is six years before the filing of the Complaint in this action (the "Class Period").

38. All such persons are referred to herein as members of the "Class" or "Class

Members."

39. The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from records maintained by Hilton.

40. The positions held, number of tours completed, and commissions earned for each Class Member are also determinable from records maintained by Hilton.

41. The names and addresses of the Class Members are readily available from Defendant Hilton.

42. Notice can be provided by means permissible under Rule 23.

43. The proposed Class is so numerous that joinder of all Class Members would be impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

44. Although the precise number of such persons is unknown, and the facts on which to determine the calculation of that number are presently within the sole control of Hilton, upon information and belief, there are more than 30 members of the Class.

45. Plaintiff's claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief which would be sought by each member of the Class in separate actions.

46. All the Class members were subject to the same corporate policy and practice of Hilton, as alleged herein, of failing to pay earned commissions.

47. The company-wide policy and practice of Hilton complained about herein affected all Class Members similarly.

48. Plaintiff is able to fairly and adequately represent and protect the interests of the Class and has no interests antagonistic to the Class.

49. Plaintiff is represented in this action by attorneys who are experienced and

competent in employment litigation and have previously represented plaintiffs in wage and hour cases.

50. A class action is superior to other available methods for the fair and efficient adjudication of the controversy—particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against their employer.

51. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions would engender.

52. Because the losses, injuries, and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them.

53. On the other hand, important public interests will be served by addressing these claims as a class action.

54. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs.

55. The issues in this action can be decided by means of common, class-wide proof.

56. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

57. There are questions of law and fact common to the Class that predominate over any questions affecting only individual class members. These common questions include, but are

not limited to: (a) whether Hilton maintained a common policy or practice of failing to accurately track and pay its Lead Generation Agents for all "Qualified Tours" they completed; (b) whether Hilton's failure to pay these commissions was willful; and (c) the proper measure of damages owed to the Class.

**FIRST CAUSE OF ACTION**
**(Unpaid Wages in Violation of NYLL)**
***Brought by Plaintiff on Behalf of Himself and the Class Members***

58. Spio-Garbrah, on behalf of himself and the Class Members, repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

59. The commissions earned by Plaintiff and the Class Members constitute "wages" within the meaning of NYLL § 190(1).

60. Hilton agreed to pay Plaintiff and the Class Members a portion of their compensation in the form of commissions pursuant to the Lead Generation Agent Compensation Plan.

61. Throughout the Class Period, Plaintiff and the Class Members earned commissions by completing tours.

62. Defendant's policy of reviewing employee tours demonstrates that it knew whether commissions were earned, rendering its violations willful. The recurring, almost monthly, nature of the underpayments further demonstrates that Defendant's failure to pay was knowing or reckless, and therefore willful.

63. Throughout the Class Period, Defendant willfully, regularly, and repeatedly failed to pay Plaintiff and the Class Members for all the commissions they earned.

**SECOND CAUSE OF ACTION**
**(Retaliation in Violation of the NYLL)**
***Brought by Plaintiff Individually***

64. Spio-Garbrah repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

65. As set forth in detail above, Spio-Garbrah engaged in protected activity under NYLL § 215 when he complained to Hilton that he was not paid all the commissions he earned.

66. Defendant's termination of Spio-Garbrah's employment in response to that protected activity constituted prohibited retaliation under NYLL § 215(1)(a).

67. As a direct and proximate result of Hilton's conduct, Spio-Garbrah has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

68. Hilton's conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Spio-Garbrah, entitling him to punitive damages.

**THIRD CAUSE OF ACTION**
**(Breach of Contract)**
***Brought by Plaintiff Individually***

69. Spio-Garbrah repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

70. The Lead Generation Agent Compensation Plan constitutes a valid and enforceable contract as to the terms of Spio-Garbrah's compensation for his role as Lead Generation Agent at Hilton.

71. Spio-Garbrah performed his contractual obligations to Hilton by completing tours.

72. The Plan expressly provides that, "[i]n the event that a Team Member is terminated, said Team Member will only be paid for earned income prior to the termination date

based on plan requirements." (Ex. A at 9).

73. Hilton materially breached its contractual obligations to Spio-Garbrah by refusing to pay him the commissions he earned for the 38 Qualified Tours he completed prior to his termination, in direct violation of the Plan's terms.

74. As a direct and proximate result of Hilton's breach of the Lead Generation Agent Compensation Plan, Spio-Garbrah has suffered and continues to suffer damages, including lost earnings.

## RELIEF

Plaintiff Papaa Spio-Garbrah, individually and on behalf of the Class, demands judgment in his favor and against Defendant Hilton Resorts Corporation as follows:

A. Certifying this action as a class action pursuant to Fed. R. Civ. P. 23;

B. An award of damages against Defendants for all unpaid commissions due to Plaintiff and the Class Members under NYLL;

C. An award of liquidated damages against Defendants equal to 100% of the amount of unpaid commissions pursuant to NYLL § 198;

D. An award of damages against Defendant, in an amount to be determined at trial, plus prejudgment interest, to compensate Spio-Garbrah for all monetary and/or economic damages, including, but not limited to, past and future lost earnings;

E. An award of damages against Defendant, in an amount to be determined at trial, plus prejudgment interest, to compensate Spio-Garbrah for all non-monetary and/or compensatory damages, including, but not limited to, compensation for his emotional distress;

F. An award of punitive damages, in an amount to be determined at trial;

G. Prejudgment interest on all amounts due;

H. An award of Spio-Garbrah's reasonable attorneys' fees and costs to the fullest extent permitted by law; and

I. Such other and further relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff Papaa Spio-Garbrah demands a trial by jury on all issues so triable of right.

Dated: September 16, 2025
New York, New York

**RISSMILLER PLLC**

By: Alex Rissmiller

Alex Rissmiller
Jazly Liriano
5 Pennsylvania Plaza, 19th Floor
New York, NY 10001
T: (646) 664-1412
arissmiller@rissmiller.com
jliriano@rissmiller.com

*Attorneys for Plaintiff Papaa Spio-Garbrah*